# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0496

Hinckley Square Associates,
Respondent,

vs.

Leah D. Cervene,
Appellant

**Filed November 9, 2015**
**Reversed**
**Chutich, Judge**

Pine County District Court
File No. 58-CV-15-14

Hinckley Square Associates, Hopkins, Minnesota (respondent)

Gwen Updegraff, Legal Aid Service of Northeastern Minnesota, Duluth, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stauber, Judge.

## S Y L L A B U S

Unless otherwise authorized by court rule, limited partnerships must be represented by licensed attorneys in pleadings and practice in district court.

## O P I N I O N

**CHUTICH**, Judge

On appeal from a judgment ordering her eviction, appellant Leah Cervene argues that the district court erred in denying her motion to dismiss the complaint because

respondent-landlord Hinckley Square Associates ("Hinckley Square") is a limited partnership and did not appear through licensed counsel in district court. Because we conclude that limited partnerships must be represented by counsel in district court, we reverse the district court's judgment evicting Cervene.

Cervene also argues that the district court erred (1) in declining to dismiss the case because of Hinckley Square's failure to give proper notices required by federal regulations and the parties' lease; (2) in finding that she owed the full amount claimed in the complaint, despite Hinckley Square's failure to adjust her rent obligation according to her income as required by federal regulations and the parties' lease; and (3) in finding that Hinckley Square effectively increased her rent despite failing to give a one-rental-period notice. Because we conclude that Hinckley Square should not have been allowed to appear in court without licensed counsel, we do not reach the merits of these issues.

**FACTS**

This litigation arises out of a landlord-tenant dispute involving a federally subsidized housing unit. The respondent-landlord, Hinckley Square, is a limited partnership that owns and operates the multi-unit apartment building known as Hinckley Square Apartments. The apartment complex is subsidized by the United States Department of Agriculture, Rural Housing Service, and is therefore subject to the rules and regulations governing rural housing service housing programs. *See* 7 C.F.R.

§§ 3560.1-3560.800 (2015).[1] Operation of the apartment complex is also governed by state law, *see* Minn. Stat. § 504B (2014), and the terms of its leases.

Cervene moved into Hinckley Square Apartments with her two children in September 2012. According to federal regulations, Hinckley Square has an obligation to recertify Cervene's eligibility in the program and adjust her rent whenever her income changes by $100 or more per month and must recertify for changes of $50 a month upon her request. *See* 7 C.F.R. § 3560.152(e). Rural Housing Service regulations also require, among other things, that a landlord issue a notice of lease violation and a notice of termination before bringing an eviction action based on a material violation of the lease. 7 C.F.R. § 3560.159(a)(1)(ii).

In August of 2014, Cervene started a job and her income increased. Cervene reported the increase and completed the paperwork for a recertification, but soon her hours began to decline. When she reported her job in September, she was working five days a week. By November, she was working only two days a week.

On November 12, 2014, the on-site manager gave Cervene a notice retroactively increasing her rent, effective as of November 1, 2014. Cervene testified that she told the manager that she could not afford the adjusted rent because her income had declined and she requested a new recertification. Cervene never received a rent adjustment. On December 30, she received a combined notice of lease violation and notice of intent to

---

[1] The parties entered into their lease in 2012, but the regulations relevant to our legal analysis are unchanged, and therefore we cite the current version of the Code of Federal Regulations.

3

evict. The notice stated that she must pay the delinquent amount or vacate the premises 48 hours later. On January 7, 2015, Hinckley Square filed an eviction action.

The action proceeded to a bench trial on January 21, 2015. Hinckley Square sought to appear through two laypeople: a general partner and its management agent. At trial, Cervene moved for dismissal based on Hinckley Square's decision to appear without an attorney. Cervene cited the Minnesota Supreme Court case *Nicollet Restoration, Inc. v. Turnham*, 486 N.W.2d 753 (Minn. 1992), for the proposition that artificial entities must be represented by licensed counsel when appearing in court. The district court denied the motion to dismiss, concluding that *Nicollet Restoration* applies only to corporations, not limited partnerships.

At trial, Hinckley Square's general partner and management agent alternated questioning witnesses and addressing the court, and the agent was the only witness called by Hinckley Square. The district court entered judgment for Hinckley Square. Cervene appeals.

**ISSUE**

**Must a limited partnership be represented by licensed counsel in district court?**

**ANALYSIS**

**I. Nonattorney Representation of Limited Partnerships**

Cervene challenges the district court's judgment ordering her eviction, arguing, as a threshold matter, that the district court erred in denying her motion to dismiss the eviction action because Hinckley Square, a limited partnership, was not represented at

4

trial by a licensed attorney. An order denying a motion to dismiss is typically not appealable, Minn. R. Civ. App. P. 103.03, but on appeal from a final judgment, we "may review any order involving the merits or affecting the judgment." Minn. R. Civ. App. P. 103.04.

Cervene asserts that limited partnerships must be represented by licensed counsel in district court. This issue is a matter of first impression and a question of law, which we review de novo. *See In re Collier,* 726 N.W.2d 799, 803 (Minn. 2007).

### A. Minnesota Caselaw

Minnesota courts have held that certain business entities may only appear through licensed counsel in district court. This caselaw is not based on statute, but on the exclusive authority of the judiciary, under Article 3 of the Minnesota Constitution, to regulate the practice of law in Minnesota courts. *Nicollet Restoration*, 486 N.W.2d at 755.

In *Nicollet Restoration*, the Minnesota Supreme Court articulated and affirmed the common-law rule that corporations must be represented by counsel when appearing in district court. *Id.* at 754, 756. The *Nicollet Restoration* court cited Minnesota caselaw, federal court decisions, and common-law principles to illustrate the rule's underlying rationale. *Id.* at 754–55.

The supreme court explained the strong public policy considerations supporting the rule:

> A non-attorney agent of a corporation is not subject to the ethical standards of the bar and is not subject to court supervision or discipline. The agent knows but one master,

5

the corporation, and owes no duty to the courts. In addition, a corporation is an artificial entity which can only act through agents. To permit a lay individual to appear on behalf of a corporation would be to permit that individual to practice law without a license. The purpose behind attorney licensing requirements is the protection of the public and the courts from the consequences of ignorance or venality.

*Id.* at 754 (quotation omitted). The supreme court noted that the licensed-attorney requirement serves the "proper administration of justice" by ensuring that "legal proceedings [are] carried on according to the rules of law and the practice of courts and by those charged with the responsibility of legal knowledge and professional duty." *Id.* at 754–55 (quoting *Strong Delivery Ministry Ass'n v. Bd. of Appeals,* 543 F.2d 32, 33–34 (7th Cir. 1976)). It also expressed concern that if corporations could be represented by agents, disbarred or otherwise unlicensed attorneys could, in effect, practice law by representing corporate clients. *Id.* at 755.

We recognize that two exceptions exist to the rule that corporations must appear through a licensed attorney in court. Corporations and other entities may appear without an attorney in conciliation-court proceedings. *See* Minn. R. Gen. Pract. 512(c) ("A corporation, partnership, limited liability company, sole proprietorship, or association may be represented in conciliation court by an officer, manager, or partner . . . ."). In addition, landlords may appear through lay agents in the specialized housing courts of Hennepin and Ramsey Counties. *See* Minn. R. Gen. Pract. 603 (stating that "[n]o person other than a principal or a duly licensed lawyer shall be allowed to appear in Housing Court unless the Power of Authority is attached to the complaint at the time of filing"); Minn. R. Gen. Pract. 601 (stating that rules 601 through 612 apply to proceedings in

6

Housing Court in Hennepin and Ramsey Counties).  Hinckley Square initiated this action in Pine County district court, so neither of these exceptions applies.

Minnesota appellate courts have not expressly addressed whether *Nicollet Restoration*'s rule applies to limited partnerships, but this court extended the rule to limited liability companies ("LLCs").  *301 Clifton Place L.L.C. v. 301 Clifton Place Condominium Ass'n*, 783 N.W.2d 551, 561 (Minn. App. 2010) (holding that LLCs must be represented by counsel in pleadings and practice in Minnesota courts).

### B.      Federal Caselaw

The *Nicollet Restoration* court looked to federal caselaw to articulate the rationale behind the common-law principle that corporations must be represented by licensed counsel in district court.  486 N.W.2d at 754–55 (quoting *Strong Delivery Ministry Ass'n*, 543 F.2d at 33–34).  Federal caselaw does not bind Minnesota courts, but because federal courts have also addressed other artificial entities, including limited partnerships, by employing the same underlying rationale that the supreme court used in *Nicollet Restoration*, we find this federal caselaw persuasive.

Federal courts have held that limited partnerships must appear through licensed counsel in federal court.  *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991).  The *Eagle Associates* court drew from the same public policy reasons articulated in *Nicollet Restoration* and concluded that it was "unable to perceive a palpable difference between the situation where a layperson is representing others having an interest in a corporation and the instant situation where a layperson wishes to represent other partners, general and limited."  *Id.* at 1309–10.  The court explained that allowing

7

one partner to appear on behalf of a partnership allows her to represent more than just herself. *Id.* at 1309.

Beyond limited partnerships, the tendency in federal caselaw has been to extend the licensed-attorney requirement rather than to limit it. *See Lattanzio v. Comta*, 481 F.3d 137, 139–40 (2d Cir. 2007) (holding that a limited liability company with only one member must be represented by counsel to appear in federal court); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 20 (2d Cir. 1983) (single shareholder corporation); *Phillips v. Tobin*, 548 F.2d 408, 415 (2d Cir.1976) (shareholder derivative suits).

The United States Supreme Court commented on this tendency, observing that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, 202 n.5, 113 S. Ct. 716, 721, 721 n.5 (1993) (citing *United States v. Reeves*, 431 F.2d 1187 (9th Cir. 1970) (holding that partner can appear on behalf of partnership) and *In re Holliday's Tax Servs., Inc.*, 417 F. Supp. 182 (E.D.N.Y. 1976) (holding that sole shareholder can appear on behalf of closely held corporation) as aberrant cases). The *Rowland* court further noted that federal courts have generally recognized that "the rationale for that rule applies equally to all artificial entities." *Id.*

The reasoning of these federal cases persuades us that the underlying rationale in *Nicollet Restoration* and *301 Clifton Place* applies equally to limited partnerships, such as Hinckley Square. Because we see no reason to treat limited partnerships differently from corporations or limited liability companies in this context, we conclude that limited

8

partnerships must also be represented by a licensed attorney in pleadings and practice in district court except when otherwise authorized by court rule.

## C.     Remedy

Next, we address the appropriate remedy.  In *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307 (Minn. 2005), the Minnesota Supreme Court determined that a complaint filed and signed on behalf of a corporate entity by a layperson is not a legal nullity, holding that the signature could be a curable defect if the participation by the nonattorney is minimal.  *Id.* at 310.  But the court found that "in no event may [a corporation] appear in court without an attorney." *Id.* at 311.

Here, Hinckley Square completed trial without representation by an attorney.  The nonattorneys' involvement is not a curable defect because it went significantly beyond signing the complaint.  Because the limited partnership could not appear in court without an attorney, the district court should have dismissed the action.  Accordingly, we reverse the district court's judgment evicting Cervene.

## II.     Additional Issues

Cervene raises three additional issues on appeal.  Because we conclude that Hinckley Square should not have been allowed to appear in court without licensed counsel and that the judgment must be reversed on this ground alone, we do not reach the merits of these issues.

9

## D E C I S I O N

We conclude that the district court erred in allowing Hinckley Square, a limited partnership, to proceed through trial without a licensed attorney. We also conclude that the participation of the nonattorneys is not a curable defect. Accordingly, we reverse the judgment of the district court ordering Cervene's eviction. In light of our decision, we do not reach the additional issues raised by Cervene.

**Reversed.**