*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1721**

Analog Technologies Corp.,
Appellant,

vs.

Edward Knutson, et al.,
Respondents.

**Filed July 13, 2015
Reversed
Chutich, Judge**

Dakota County District Court
File No. 19-C1-07-007480

Dean A. LeDoux, Samuel W. Diehl, Gray, Plant, Mooty, Mooty & Bennett, P.A.,
Minneapolis, Minnesota (for appellant)

Jon S. Swierzewski, Kenneth Corey-Edstrom, Richard J. Reding, Larkin Hoffman Daly
& Lindgren, Ltd., Minneapolis, Minnesota (for respondents)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

In 2009, a jury determined that respondents Edward Knutson and his company, Dimation, Incorporated, misappropriated a trade secret that belonged to Knutson's former employer, appellant Analog Technologies Corporation. Analog then secured a monetary

judgment against Dimation and an injunction prohibiting Dimation from violating the trade secret. Dimation went bankrupt soon after the judgment, and the parties negotiated a confession of judgment that allowed Dimation to satisfy the outstanding $1,880,475 judgment for $600,000, provided that Dimation pay the sum promptly and comply with the injunction.

Two years after the confession of judgment was negotiated, Analog moved the district court to find Dimation in contempt for violating the injunction. The district court determined that Dimation had complied with the injunction and satisfied its outstanding obligation to pay Analog $600,000. Analog challenges the district court's decision, arguing that Dimation did not comply with the injunction and therefore owes Analog the remaining $1,280,475. Analog further argues that Dimation should be held in contempt for violating the injunction. Because the record shows that Dimation violated the injunction while it remained in full force and effect, we reverse.

## FACTS

This is the third appeal between appellant Analog Technologies Corporation and its former employee, respondent Edward Knutson, involving the misappropriation of a trade secret. Analog is an electrical engineering company. Knutson worked at Analog until his resignation in late March 2004.

After leaving Analog, Knutson started his own company, respondent Dimation, Incorporated. Dimation competed directly with Analog. In 2007, Analog sued Knutson and Dimation for breach of contract, misappropriation of confidential information and trade secrets, breach of fiduciary duty, and tortious interference with contract. The jury

2

found Knutson, Dimation, or both, guilty of misappropriating a trade secret from Analog and judgment was entered against Knutson and Dimation for approximately $1,600,000. Analog also secured an injunction prohibiting Knutson and Dimation from violating its trade secret (the 2009 injunction).

The 2009 injunction, in relevant part, prohibited Knutson and Dimation "from performing any [ball-grid-array] process, installation, manufacture, repair, re-work, and re-balling services for any customer or entity . . . for a period of three years from the date of [the order]." Dimation filed for bankruptcy shortly after the judgment was entered.

While in bankruptcy, Dimation negotiated a confession of judgment with Analog. The confession of judgment stated that Dimation would pay Analog $1,880,475 plus interest over a 120-month period. It also included an Early Payment Option that permitted Dimation to pay Analog $600,000 by November 23, 2012, in full satisfaction of the outstanding $1,880,475 judgment.[1] The Early Payment Option stated that it would expire if

> [Dimation] defaults on any payment owed Analog under the Plan or if [Dimation] or . . . Knutson, are found to be or to have been at any time in breach of the State Action Injunction. The Early Payment Option shall also expire if the State Action Injunction is overturned or modified in a final, non-appealable order that reduces the scope of the State Action Injunction.

After the parties formalized the confession of judgment, Dimation moved for a new trial and amended findings, arguing that the injunction violated Minnesota Rule of

---

[1] In addition to the original $1,600,000 judgment, the district court awarded Analog attorney's fees and costs.

Civil Procedure 65.04 because it was vague, overbroad, and the district court failed to state the reasons for it. *Analog Techs. Corp. v. Knutson*, A10-1181, 2011 WL 1236164, at *2 (Minn. App. Apr. 5, 2011) [hereinafter *Analog I*]. This court determined that the injunction was proper but remanded it for the district court to "specify the nature, scope, and duration of the prohibited conduct so as to reasonably permit both compliance and enforceability." *Id.* at *7.

While *Analog I* was on appeal, Dimation continued to pay Analog $10,000 per month in compliance with the Early Payment Option. On November 19, 2012, Dimation sent Analog a check for $370,000 as its final payment under the Early Payment Option. Analog refused to cash the check and instead sent Dimation a letter claiming that the Early Payment Option was void because Dimation failed to comply with the injunction. Dimation made no further payments believing that it had fulfilled the terms of the Early Payment Option.

On remand, Analog and Dimation submitted proposed modifications to the injunction. Dimation argued, in part, that the injunction should not restrain Dimation from performing flip-chip or ball-grid-array processes that were generally known and readily ascertainable. On March 13, 2013, the district court issued another injunction (the 2013 injunction) in compliance with *Analog I*'s remand instructions. The 2013 injunction included the same language from the 2009 injunction prohibiting Knutson and Dimation from performing any ball-grid-array repairs for any customer or entity. The 2013 injunction also referenced Exhibit A—a document that Analog created to describe

4

its flip-chip and ball-grid-array processes—to help the district court identify what trade secrets it sought to protect.

In April 2013, Dimation appealed the 2013 injunction to this court, arguing that it was not specific enough, and it impermissibly sought to protect flip-chip and ball-grid-array processes that were well known in the industry and not a protectable trade secret. *Analog Techs. Corp. v. Knutson*, No. A13-0627, 2013 WL 6839875, at *1-2 (Minn. App. Dec. 30, 2013) [hereinafter *Analog II*], *review denied* (Minn. Mar. 18, 2014). This court affirmed the 2013 injunction. *Id.* at *5.

Analog then petitioned the district court to find Dimation in contempt for violating the injunction. Dimation opposed the motion and argued that it had satisfied the terms of the Early Payment Option. In September 2014, the district court held a two-day evidentiary hearing to resolve the outstanding motions. Several witnesses testified at the hearing including Knutson. During the hearing, the following exchange occurred between Knutson's attorney and Knutson:

> Q: Were you able to get any [ball-grid-array] installation or repair work?
> A: Very few.
> …
> Q: So from April of 2011 to February of 2012, how much [ball-grid-array] installation or repair work did you do?
> A: Around $8,000 worth.
> Q: How many orders?
> A: Maybe ten at the most.

The district court found in favor of Dimation. It concluded, in relevant part, that Dimation had not violated the terms of the Early Payment Option and that Analog "failed to prove that Dimation's [ball-grid-array] installation work violated its trade secret with

5

regard to the [ball-grid-array] and flip-chip process Dimation used." The district court further concluded that Analog waived any claim that Dimation violated the injunction by engaging in surface-mount assembly work and was equitably estopped from arguing that Dimation "violated the Injunctions by engaging in surface mount assembly work." Analog appealed.

## DECISION

Analog argues that the district court erred in finding that Dimation did not violate the injunction. This court defers to a district court's factual findings unless they are clearly erroneous. *Roehrdanz v. Brill*, 682 N.W.2d 626, 631 (Minn. 2004). "That is, we examine the record to see '[i]f there is reasonable evidence' in the record to support the court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (alteration in original) (quoting *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999)). A finding of fact is clearly erroneous only if we are left with the definite and firm conviction that a mistake has occurred. *Id.* This clearly erroneous standard also applies to implicit findings of fact. *See Vettleson v. Special Sch. Dist. No. 1*, 361 N.W.2d 425, 428 (Minn. App. 1985).

Analog argues that Dimation voided the Early Payment Option because Knutson admitted that Dimation had performed over $8,000 in ball-grid-array repairs while the injunction was in place. Dimation responds that it never breached the injunction and contends that Analog cannot cite to any district court findings showing that Dimation or Knutson breached the injunction.

6

In its findings of fact, the district court stated that Analog "failed to provide any evidence that Knutson or Dimation's work infringed on Analog's trade secret." But during the September 2014 evidentiary hearing, Knutson admitted that Dimation had performed $8,000 worth of ball-grid-array "installation or repair work" from April 2011 to February 2012. The district court's order did not mention Knutson's testimony regarding the $8,000 in ball-grid-array work. Because Knutson testified that Dimation had performed $8,000 worth of ball-grid-array repairs *while* the injunction was in effect, we are left with the "definite and firm conviction" that the district court's findings of fact were clearly erroneous and that Dimation breached the injunction. *See Rasmussen*, 832 N.W.2d at 797.

We also need not determine which injunction was in place at the time of the breach because *both* the 2009 and 2013 injunctions prohibited Dimation "from performing any [ball-grid-array] . . . repair." Furthermore, our decision in *Analog I* did not vacate or reverse the 2009 injunction. *See Analog II*, 2013 WL 6839875, at *4 ("[W]e did not vacate or reverse the November 3, 2009 injunction."). Thus, an injunction was in place during Dimation's breach and Dimation's actions amounted to a breach regardless of which injunction governed.

Dimation further contends that Knutson's testimony was not enough to prove that Dimation violated the 2013 injunction because the 2013 injunction required Analog to show that Dimation violated the *specific* ball-grid-array process described in Exhibit A.

As discussed above, Dimation's actions were a breach under the plain language of either injunction. And contrary to Dimation's argument, the 2013 injunction did not

7

require Analog to prove that Dimation's ball-grid-array repairs violated the specific process set forth in Exhibit A. Section 1(b) of the 2013 injunction prohibited Knutson and Dimation from "any further or continuing disclosure or use, for any purpose, of the [ball-grid-array] process *as described in Exhibit A*." (Emphasis added.) In contrast, section 1(d) prohibited Knutson and Dimation from "performing any [ball-grid-array] . . . repair . . . for any customer or entity, until [the] Injunction expires." Notably, section 1(d) does not reference Exhibit A—unlike section 1(b). Thus, Dimation's $8,000 in ball-grid-array repairs violated section 1(d) of the 2013 injunction, and it was not necessary for Analog to prove that these repairs followed the specific process set forth in Exhibit A.

Moreover, Dimation was *contractually* obligated to comply with the injunction. "Contract interpretation is a question of law that we review de novo." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). We review a contract's language to determine the parties' intent. *Id.* "We have consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004).

Here, the Early Payment Option was a contract that became void if Dimation or Knutson were "found to be or to have been at any time in breach of the State Action Injunction." This provision was clear: if Dimation or Knutson violated the injunction, the Early Payment Option ended. We recognize that this court's earlier decision in *Analog I* held that the 2009 injunction was too broad to be enforceable. But, as

8

previously discussed, Knutson's testimony was sufficient to prove that Dimation violated either version of the injunction. We therefore conclude that Dimation's violation of the injunction was a contractual breach that voided the Early Payment Option.

Because the record shows that Dimation breached the injunction and voided the Early Payment Option, Dimation must pay Analog $1,280,475—the original judgment of $1,880,475 entered against Dimation less the $600,000 that Dimation paid in satisfaction of the Early Payment Option.

Lastly, Analog argues that the district court erred in failing to find Dimation in contempt. The district court has broad discretion in awarding contempt, and it is within the district court's discretion to award or to deny it. *See Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn. 1986). The purpose of civil contempt is remedial rather than punitive. *Mower Cnty. Human Servs. ex rel. Swancutt v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996). Because our decision reinstates the original $1,880,475 judgment, finding Dimation in contempt would serve no further remedial purpose. *See id.* Accordingly, we cannot say that the district court abused its discretion in denying Analog's motion for contempt.

**Reversed.**